

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JAHMAL WILLIAMS, | : | |
| | : | CIVIL ACTION |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | NO. 16-2903 |
| ORTIZ, et al. | : | |
| | : | |
| Defendants. | : | |

FILED

MAR 27 2019

KATE BARKMAN, Clerk
By _____ Dep. Clerk

Goldberg, J.                                                                                                    March 26, 2019

**MEMORANDUM OPINION**

Plaintiff, Jahmal Williams, acting *pro se*, instituted this action alleging violations of his civil rights by Warden Gerald May, Warden David Ortiz, and multiple John Doe Defendants. The claims against Defendant May were dismissed in a February 6, 2008 Order. Defendant Ortiz subsequently filed the current Motion to Dismiss all claims against him. For the following reasons, the Motion will be granted without prejudice to Plaintiff's right to file a second amended complaint.

**I. FACTUAL BACKGROUND**

The following facts are taken from Plaintiff's Amended Complaint:[1]

On January 26, 2016, Plaintiff, who was confined in Curran-Fromhold Correctional Facility ("CFCF"), was brought in to federal court via writ to testify in a criminal case captioned United States v. Jonquaris. The writ was approved by the judge in that case and verified by the

---

[1] In deciding a motion under Federal Rule of Civil Procedure 12(b)(6), the court must accept all factual allegations in the complaint as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading, the plaintiff may be entitled to relief. Atiyeh v. Nat'l Fire Ins. Co. of Hartford, 742 F. Supp. 2d 591, 596 (E.D. Pa. 2010).

Warden of CFCF, Gerald May. As a result, Plaintiff was transported from state prison to the United States District Court. Upon completion of his testimony, the U.S. Marshals informed Plaintiff that he would be held temporarily at the Federal Detention Center ("FDC") in Philadelphia, even though he was not a federal prisoner. Plaintiff alleges he told one of the Marshals that he did not feel safe or comfortable at the FDC, but the Marshals directed him to voice his concerns to FDC officers. (Id. ¶ 11.)

Upon arrival at the FDC, Plaintiff immediately expressed concerns to officers on duty that fellow inmates "may oppose him given the circumstance that everyone was under the impressions he was acquitted of federal charges." When the FDC officer declined to act on Plaintiff's concern, Plaintiff refused to comply with the admission process. As such, a response team was called to force Plaintiff to comply with the admission process. Plaintiff was then transferred to the same unit as Mr. Jonquaris, in whose criminal trial he had just testified. At that trial, Mr. Jonquaris allegedly had expressed that "he was not pleased with Plaintiff's testimony." (Id. ¶¶ 12–13.)

Sometime in the beginning of February 2016, at approximately lunch time, Plaintiff was attacked and knocked unconscious. Upon returning to his senses, he realized his jumpsuit was not buttoned up, he felt "slight" anal pains, and he found "specs of blood" on a tissue used to clean himself. Plaintiff claims that he received head injuries and psychological damage as a result of the sexual assault. (Compl. p. 3.)

## II. PROCEDURAL HISTORY

Plaintiff instituted this action on June 10, 2016, and filed his Complaint on September 22, 2016 against Warden May (the warden at CFCF), Warden Ortiz (the warden at FDC), and several

John Doe marshals and supervisors.[2] On May 16, 2017, Plaintiff filed an Amended Complaint—which is the subject of the pending motion—alleging, in pertinent part, that Warden Ortiz failed to ensure that inmates who were witnesses in other inmates' trials were separated from them. (Am. Compl ¶ 17.) He further claimed that Warden Ortiz abandoned his duty, as legal custodian, to avoid all reasonable risk to Plaintiff. (Id. ¶ 18.)

By Order dated February 6, 2018, the Honorable Lawrence F. Stengel, to whom this case was originally assigned, granted Warden May's motion to dismiss all claims against him. The case was subsequently transferred to my docket. On September 28, 2018, Warden Ortiz filed the current Motion to Dismiss. Plaintiff failed to file a response and, on December 12, 2018, I directed that Plaintiff submit any response on or before January 4, 2019. Presently, Plaintiff has not filed a response.

## III. STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 12(b)(6), a defendant bears the burden of demonstrating that the plaintiff has not stated a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6); see also Hedges v. United States, 404 F.3d 744, 750 (3d Cir. 2005). The United States Supreme Court has recognized that "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quotations omitted). "[T]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" and "only a complaint that states a plausible claim for relief survives a motion to dismiss." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows

---

[2] The case was delayed for a period of time while the matter was placed on the Prisoner Civil Rights Panel for potential appointment of counsel.

3

the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. A complaint does not show an entitlement to relief when the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct. Id.

The Court of Appeals has detailed a three-step process to determine whether a complaint meets the pleadings standard. Bistrian v. Levi, 696 F.3d 352 (3d Cir. 2014). First, the court outlines the elements a plaintiff must plead to state a claim for relief. Id. at 365. Next, the court must "peel away those allegations that are no more than conclusions and thus not entitled to the assumption of truth." Id. Finally, the court "look[s] for well-pled factual allegations, assume[s] their veracity, and then 'determine[s] whether they plausibly give rise to an entitlement to relief.'" Id. (quoting Iqbal, 556 U.S. at 679). The last step is "'a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" Id. (quoting Iqbal, 556 U.S. at 679).

A prisoner's *pro se* complaint should be "held to less stringent standards than formal pleadings drafted by lawyers." United States ex rel. Walker v. Fayette Cnty., Pa., 599 F.2d 573, 575 (3d Cir. 1979) (citing Haines v. Kerner, 404 U.S. 519, 521 (1972)). The court must construe the facts stated in the complaint liberally in favor of the plaintiff. Haines, 404 U.S. at 520. "Yet there are limits to our procedural flexibility. For example, *pro se* litigants still must allege sufficient facts in their complaints to support a claim." Mala v. Crown Bay Marina, Inc., 704 F.3d 239, 245 (3d Cir. 2013). Thus, even a *pro se* complaint must conform with the requirements of Rule 8(a) of the Federal Rules of Civil Procedure, which "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation" or "naked assertions" that are devoid of "factual enhancement." Iqbal, 556 U.S. at 678 (internal quotations omitted). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action' will not do." Id.

4

## IV. DISCUSSION

Plaintiff brought his claims against Warden Ortiz under 42 U.S.C. § 1983, which addresses constitutional violations by state officials. As Warden Ortiz is a federal official, he cannot be held liable under § 1983.

In Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, however, the United States Supreme Court recognized an implied right of action for damages against federal officials who have violated a person's Fourth Amendment rights. 403 U.S. 388 (1971). The United States Court of Appeals for the Third Circuit has extended the Bivens action "to suits for damages brought under the equal protection component of the Due Process Clause of the Fifth Amendment . . . and the Cruel and Unusual Punishments Clause of the Eighth Amendment." Bistrian v. Levi, 696 F.3d 352, 365–66 (3d Cir. 2012). Although the Supreme Court has refused to extend Bivens liability to any new contexts, when it does apply, the implied cause of action is "the federal analog to suits brought against state officials under . . . 42 U.S.C. § 1983." Id. (quoting Iqbal, 556 U.S. at 675–76).

In the recently-decided case of Bistrian v. Levi, 912 F.3d 79 (3d Cir. 2018), the Third Circuit specifically held that a federal detainee has a cognizable Bivens cause of action for a claim of failure to protect from attack by other inmates. Id. at 91–94. Accordingly, I will liberally construe Plaintiff's *pro se* claims as being brought under Bivens rather than § 1983.

Warden Ortiz contends that the claims against him must nonetheless be dismissed under the doctrine of qualified immunity. The sufficiency of a plaintiff's failure to protect allegations lodged against a federal officer "is 'inextricably intertwined with' and 'directly implicated by' the defense of qualified immunity." Bistrian, 696 F.3d at 366. Under that defense, "government officials performing discretionary functions generally are shielded from liability for civil damages

5

insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). The Supreme Court has consistently "stressed the importance of resolving [qualified] immunity questions at the earliest possible stage of the litigation." Hunter v. Bryant, 502 U.S. 224, 227, (1991); see also Miller v. Clinton Cty., 544 F.3d 542, 547 (3d Cir. 2008) (explaining that "any claim of qualified immunity must be resolved at the earliest possible stage of the litigation"). To overcome a defense of qualified immunity, a plaintiff must "plead[] facts showing that (1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." Ashcroft v al-Kidd, 563 U.S. 731, 735 (2011).

"For a constitutional right to be clearly established, its contours 'must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.'" Bistrian, 696 F.3d at 366 (quoting Anderson v. Creighton, 483 U.S. 635, 640 (1987)). "To meet this test, generally 'there must be sufficient precedent at the time of [the defendant's] action, factually similar to the plaintiff's allegations, to put [the] defendant on notice that his or her conduct is constitutionally prohibited.'" Id. (quoting McLaughlin v. Watson, 271 F.3d 566, 572 (3d Cir. 2001)). Thus, to overcome the assertion of qualified immunity at the motion to dismiss stage, a plaintiff must sufficiently plead not only a violation of a constitutional or statutory right, but also a violation of a clearly-established one. Id.

Here, Plaintiff alleges that Warden Ortiz is liable for failing to protect him from assaults by other inmates. The law is well settled that both prisoners and detainees have a clearly-established right---either under the Eighth Amendment or the Fourteenth Amendment Due Process

Clause—to have prison officials protect them from inmate violence.[3] Bistrian, 696 F.3d at 367. As noted by the Supreme Court, "[b]eing violently assaulted in prison is simply not part of the penalty that criminal offenders pay for their offenses against society." Farmer v. Brennan, 511 U.S. 825, 834 (1994) (quotation marks omitted).

Still, not "every injury suffered by one prisoner at the hands of another . . . translates into constitutional liability for prison officials responsible for the victim's safety." Farmer, 511 U.S. at 834. "[G]overnment officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior*" Bistrian, 696 F.3d at 366 (quotations omitted). Rather, "[t]o state a claim for damages against a prison official for failure to protect from inmate violence, an inmate must plead facts that show (1) he was incarcerated under conditions posing a substantial risk of serious harm, (2) the official was deliberately indifferent to that substantial risk to his health and safety, and (3) the official's deliberate indifference caused him harm." Id. at 367. "Deliberate indifference" in this context is a subjective standard: "the prison official-defendant must actually have known or been aware of the excessive risk to inmate safety." Beers-Capitol v. Whetzel, 256 F.3d 120, 125 (3d Cir. 2001). It is not sufficient that the official should have known of the risk. Id. at 133. It is "a state of mind more blameworthy than negligence." Farmer, 511 U.S. at 835. Thus, the "out-of-the-blue and unadorned 'I'm-in-trouble' entreaty that is commonly faced by officials, who are charged with the 'arduous' task of managing an inmate population while protecting those in custody," is insufficient to allege deliberate indifference. Blackstone v. Thompson, 568 F. App'x 82, 84 (3d Cir. 2014) (internal citations and

---

[3] Based on the facts of the Amended Complaint, it is not entirely clear whether the Eighth or Fourteenth Amendment applies. Plaintiff was apparently a convicted state court prisoner, but was being held in federal custody during the pendency of his testimony in another criminal trial. For purposes of this Motion, I need not resolve this issue.

7

quotation marks omitted) (finding plaintiff's complaint to officer that he was not "getting along" and did not "feel comfortable" with his cellmate, who had a history of violence, insufficient to state a claim of deliberate indifference when cellmate attacked plaintiff).

Here, Plaintiff has not set forth sufficient facts about Warden Ortiz's involvement in his FDC placement to overcome the qualified immunity defense. Plaintiff alleges that, just after the completion of his testimony in the trial of a federal inmate, he relayed his safety concerns to a U.S. Marshal, who told him to voice the matter to FDC officers. (Am. Compl. ¶ 12.) Upon arrival at the FDC, Plaintiff asserts that he "immediately expressed concerns to officers on duty [and] reiterated con[c]erns that fellow inmates may oppose him given the circumstance, that everyone was under the impressions he was acquitted of federal charges." (Id.) According to Plaintiff, "[t]his impression would raise questions as to why was plaintiff at F.D.C. if he had no federal case?" (Id.) Although an inference may be drawn that Plaintiff had expressed his concerns about the inmate in whose trial he had just testified, Plaintiff does not allege that he ever directly informed Warden Ortiz about his concerns, requested that his concerns be relayed to Warden Ortiz, or filed any formal grievance about his housing situation. And Plaintiff fails to point to any factual circumstances to suggest that Warden Ortiz was aware of or deliberately indifferent to any risk. Rather, Plaintiff relies simply on an "out-of-the-blue and unadorned 'I'm-in-trouble' entreaty," made to an unknown correctional officer, that has been deemed insufficient to suggest deliberate indifference by a prison official. Blackstone, 568 F. App'x at 84.

Plaintiff alternatively contends that Warden Ortiz's failure to develop a policy of separating witness-inmates from defendant-inmates, whose trial would be affected by the witness's testimony, constitutes deliberate indifference and an abandonment of his duty as a legal custodian. However, there is no clearly-established federal right for an inmate to be housed in a particular

8

manner. Rather, it is well settled that "'a prison's internal security is peculiarly a matter normally left to the discretion of prison administrators,' . . . [and] . . . '[p]rison administrators . . . should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security.'"[4] Rinaldi v. U.S., 904 F.3d 257, 273–74 (3d Cir. 2018) (quoting Rhodes v. Chapman, 452 U.S. 337, 350 (1981) and Bell v. Wolfish, 441 U.S. 520, 547 (1979)).

In light of this deference, Bivens liability does not extend to the mere lack of a policy—without some other indication of a threat—of separating inmates when one is cooperating with authorities against the other. Indeed, Plaintiff does not allege that he received and reported any particularized threat from a specific inmate. Rather, he complained only about a fear of remaining in federal custody after testifying in a fellow federal inmate's trial.

In sum, Plaintiff's Amended Complaint, even read liberally, fails to allege sufficient facts to overcome Warden Ortiz's defense of qualified immunity. Accordingly, Warden Ortiz's Motion to Dismiss will be granted.

## V. CONCLUSION/LEAVE TO AMEND

With the dismissal of Warden Ortiz, the only remaining Defendants in this action will be several unnamed parties. The Third Circuit has held that "an action cannot proceed solely against unnamed parties," so that the dismissal of all named parties requires dismissal of the entire suit. Hindes v. FDIC, 137 F.3d 148, 159 (3d Cir. 1998). Accordingly, I will dismiss Plaintiff's Amended Complaint.

---

[4] This same deference precludes Plaintiff from bringing a tort claim against Warden Ortiz. Rinaldi v. U.S., 904 F.3d 257, 273–74 (3d Cir. 2018) (holding that housing and cellmate assignments fall within the discretionary function exception to the Federal Tort Claims Act's limited waiver of the federal government's sovereign immunity from civil liability for negligent acts of government employees acting within the scope of their employment).

9

Nonetheless, I remain cognizant of Plaintiff's *pro se* status and recognize that he may be able to plausibly state a claim against Warden Ortiz and the unnamed Defendants. Generally, a court should freely grant leave to amend the complaint when justice so requires "unless it would be inequitable or futile." Grayson v. Mayview State Hosp., 293 F.3d 103, 108 (3d Cir. 2002). I will therefore grant Plaintiff thirty days from the date of this Order to file a second amended complaint that sets forth facts supporting his claims and identifies the John Doe Defendants with more specificity. I emphasize that failure to do so will result in dismissal of his case with prejudice.

An appropriate Order follows.